Ref to OIG Evaluation                    Auditee Comments

Mr. Antone L. Giordano, General Partner
January 13, 2003
Page 3

### Our Responsibilities (continued)

Our workpapers for this engagement are the property of Lefkowitz, Garfinkel, Champi & DeRienzo P.C. and constitute confidential information. However, we may be requested by the United States Department of Labor (DOL) pursuant to authority given to it by law to make certain workpapers and other documents in our possession related to this engagement (or photocopies thereof) available to authorized representatives of the DOL, and the DOL may intend or decide to distribute the photocopies of information provided to them to others including other governmental agencies. Also, we may be requested by third party auditors to make certain workpapers and other documents in our possession related to this engagement (or photocopies thereof) available to duly authorized agents of Secretary of HHS, the Comptroller General and their duly authorized representatives and/or representative of the third party auditors. We will retain our workpapers for the necessary time periods and provide to the appropriate duly authorized agents and their representatives access to requested workpapers and other documents under the supervision of LGC&D audit personnel and at a location designated by our firm.

Your signing this letter constitutes both your acknowledgement of our requirement to provide such access and your permission to make requested workpapers and other documents, or to provide photocopies thereof, available to the appropriate duly authorized agents and their representatives for the purposes described in the preceding two paragraphs. We will advise you if such requests are made.

If, for any reason, we are unable to complete the engagement or are unable to form or have not formed a limited-scope opinion as permitted by Regulation 2520.103-8 of the DOL's Rules and Regulations for Reporting and Disclosure under ERISA, we may decline to express such an opinion or to issue a report as a result of this engagement.

### Our Communications to the Plan's Administrator

We will communicate in writing to the Plan's Administrator any matters coming to our attention that, in our judgment, represent significant deficiencies in the Plan's internal control, which could adversely affect its ability to record, process, summarize, and report financial data.

We also will communicate in writing to the Plan's Administrator any significant irregularities or fraud that may come to our attention.

69

Ref to OIG Evaluation                    Auditee Comments

Mr. Antone L. Giordano, General Partner
January 13, 2003
Page 4

### The Plan's Responsibilities

The management of the Plan is responsible for the financial statements and for maintaining effective internal control over financial reporting that will, among other things, help assure the preparation of financial statements in conformity with the principles generally accepted in the United States. Management also is responsible for identifying and ensuring that the Plan complies with all laws and regulations related to its activities.

Although we can advise the Plan, it is management's responsibility to adopt sound accounting policies, maintain an adequate and efficient accounting system, safeguard assets, and devise policies to prevent fraud.

Management's responsibility for financial reporting includes establishing a process to prepare the accounting estimates included in the financial statements. Management judgments are necessary, and are typically based on its knowledge and experience about past and current events, and its expected courses of action.

At the completion of our audit, management will provide us with a representation letter confirming, among other things, that management is responsible for the Plan's financial statements and, should any misstatements not be corrected do to immateriality, that management considers such uncorrected misstatements as immaterial, individually and in the aggregate, in relation to the Plan's financial statements taken as a whole.

Management and the Plan Administrator are responsible for making all financial records and related information available to us. The Plan and Mt. St. Francis Health Center Associates (the Center) agree to release, indemnify, defend, and hold harmless LGC&D and its principals and personnel from any liability or claim, and pay any legal fees and other costs incurred by LGC&D, as a result of LGC&D's reliance on any misrepresentations made by the Plan or management of the Center.

Mr. Peter Fournier, Administrator of the Center and his staff will provide us with the Plan's Form 5500 and all other requested schedules and analyses. Timely completion of the audit depends on preparing schedules and analyses timely and accurately. If there are delays in preparing this material or if schedules must be continually revised, our fees will increase. We will advise you of any difficulties or delays in completing the engagement.

We understand that The Hartford Life Insurance Company will prepare Form 5500 for the year ended December 31, 2002. We will read the Form 5500 as it relates to our audit. If our reading of the Form 5500 leads us to believe there is an inconsistency between the return and our audited financial statements we will advise you accordingly.

Ref to OIG Evaluation                    Auditee Comments

Mr. Antone L. Giordano, General Partner
January 13, 2003
Page 5

### Fees

Our fee for the above mentioned services will be based on our customary rates for these services, plus out-of-pocket costs. An invoice will be submitted at the completion of the audit and is due when presented. *See attached fee Schedule.*

Should services other than those covered by this letter be required or requested, we will discuss with you before beginning the work the extent of these services and the basis for additional fees.

### Additional Services

Both parties may agree that we perform additional services not contemplated by this engagement letter. If this occurs, we will communicate with you regarding the scope and estimated cost of those additional services. Engagements for additional services may necessitate that we issue a separate engagement letter to reflect the obligations of both parties. In the absence of any other written communications from us documenting such additional services, our services will be governed by the terms of this engagement letter.

### Agreement

Please sign and return the enclosed two copies of this letter to signify your understanding of the arrangements and as authorization for us to proceed.

We look forward to a continuing and mutually beneficial association.

Very truly yours,

LEFKOWITZ, GARFINKEL, CHAMPI & DeRIENZO P.C.

Michael E. Criscione, Principal
Certified Public Accountant

MEC/mp

ACCEPTED:

By: _____

Date: _____2/24/03_____

71

Ref to OIG Evaluation                    Auditee Comments



Lefkowitz, Garfinkel, Champi & DeRienzo P.C.
Certified Public Accountants / Business Consultants

Principals
Jerome C. Lefkowitz, CPA
Stephen M. Garfinkel, CPA
Frank J. Champi, CPA
Richard J. DeRienzo, CPA
Jerrold N. Dorfman, CPA, PFS
Peter Mezel, CPA
Stephen W. Geremia, CPA
Susan R. Johnson, CPA
Michael E. Criscione, CPA

February 13, 2003

Mr. Antone L. Giordiano, General Partner
Mount St. Francis Health Center
4 St. Joseph Street
Woonsocket, RI  02895

RE:    Engagement Letters – Mount St. Francis Health Center (the Partnership)
       401(K) Plan and Electronic Submission of Financial Statements to HUD
       Year Ended December 31, 2002

Dear Antone:

The following fee ranges will be incorporated into our original engagement letters dated January 13, 2003 by way of this addendum.

### Fees

The fee for the Partnership's 401(K) Plan audit will be in the range of $3,500 to $4,000 plus customary out-of-pocket costs.    The fee for the electronic submission of the Partnership's financial statements to HUD will be approximately $750.

### Agreement

If this addendum correctly expresses your understanding, please indicate your approval by signing and returning the enclosed two copies of this letter along with two copies of the original engagement letter to me.

Very truly yours,

LEFKOWITZ, GARFINKEL, CHAMPI & DeRIENZO P.C.

Michael E. Criscione, Principal
Certified Public Accountant

ACCEPTED:

By:  _____

Date:  _____

10 Weybosset Street • Suite 700 • Providence, Rhode Island 02903 • Tel (401) 421-4800 • 1-800-927-LGCD • Fax (401) 421-0643

72

Ref to OIG Evaluation                    Auditee Comments



Lefkowitz, Garfinkel, Champi & DeRienzo P.C.
Certified Public Accountants / Business Consultants

Principals
Jerome L. Lefkowitz, CPA
Stephen M. Garfinkel, CPA
Frank J. Champi, CPA
Richard J. DeRienzo, CPA
Jerrold N. Dorfman, CPA, PFS
Peter Mezd, CPA
Stephen W. Gerrousa, CPA
Susan R. Johnson, CPA
Michael E. Criscione, CPA

February 13, 2003

Mr. Antone L. Giordiano, General Partner
Mount St. Francis Health Center
4 St. Joseph Street
Woonsocket, RI 02895

RE:    Engagement Letters – Mount St. Francis Health Center (the Partnership)
       401(K) Plan and Electronic Submission of Financial Statements to HUD
       Year Ended December 31, 2002

Dear Antone:

The following fee ranges will be incorporated into our original engagement letters dated January 13, 2003 by way of this addendum.

#### Fees

The fee for the Partnership's 401(K) Plan audit will be in the range of $3,500 to $4,000 plus customary out-of-pocket costs.    The fee for the electronic submission of the Partnership's financial statements to HUD will be approximately $750.

#### Agreement

If this addendum correctly expresses your understanding, please indicate your approval by signing and returning the enclosed two copies of this letter along with two copies of the original engagement letter to me.

Very truly yours,

LEFKOWITZ, GARFINKEL, CHAMPI & DeRIENZO P.C.

Michael E. Criscione, Principal
Certified Public Accountant

ACCEPTED:

By: _____

Date: _____

10 Weybosset Street ▪ Suite 700 ▪ Providence, Rhode Island 02903 ▪ Tel (401) 421-4800 ▪ 1-800-927-LGCD ▪ Fax (401)421-0643

73

Ref to OIG Evaluation                          Auditee Comments



**Lefkowitz, Garfinkel, Champi & DeRienzo P.C.**
Certified Public Accountants / Business Consultants

Principals
Jerome L. Lefkowitz, CPA
Stephen M. Garfinkel, CPA
Frank J. Champi, CPA
Richard J. DeRienzo, CPA
Jerald N. Dorfman, CPA, PFS
Peter Mazzi, CPA
Stephen W. Gerencia, CPA
Susan R. Johnson, CPA
Michael E. Criscione, CPA

January 13, 2003

Mr. Antone L. Giordano, General Partner
Mount Saint Francis Health Center Associates
4 Joseph Street
Woonsocket, RI 02895

Dear Mr. Giordano:

Thank you for continuing to use Lefkowitz, Garfinkel, Champi & DeRienzo P.C. (LGC&D) as the independent auditors and third-party reimbursement consultants for Mount Saint Francis Health Center Associates (a Limited Partnership) (the Partnership). This letter confirms our understanding of the terms and objectives of our engagement and the nature and the limitations of the services we will provide.

### Our Responsibilities

We will audit the Partnership's balance sheet as of December 31, 2002 and the related statements of loss, partners' equity deficiency and cash flows for the year then ended. We also will audit the Partnership's compliance with specific requirements applicable to its major HUD-assisted program for the year ended December 31, 2002.

We will plan and perform the audit in accordance with auditing standards generally accepted in the United States, standards for financial audits contained in Government Auditing Standards, issued by the Comptroller General of the United States, and the Consolidated Audit Guide for Audits of HUD Programs (the Guide) issued by HUD. Those standards and the Guide require that we obtain reasonable, rather than absolute, assurance that the financial statements are free of material misstatement, whether caused by error or fraud. Accordingly, a material misstatement might remain undetected. In our audit, we will examine, on a test basis, evidence supporting the amounts and disclosures in the financial statements and evaluate the overall financial statement presentation. Using professional judgment, we will decide what, how much and when to test, and what the results mean.

The financial statements will include such supplementary data as may be required by HUD. This data will be presented for the purpose of additional analysis and will be subjected to the auditing procedures applied in the audit of the basic financial statements.

We will update our understanding of the Partnership's internal control. Our purpose is to plan the audit and determine the nature, timing, and extent of the audit procedures needed to be performed to express our opinion on the financial statements, express our opinion on compliance with specific requirements applicable to its major HUD-assisted program, and to report on internal control in accordance with the provisions of the Guide, and not to provide assurance on, or identify significant deficiencies in, internal control.

10 Weybosset Street ▪ Suite 700 ▪ Providence, Rhode Island 02903 ▪ Tel (401) 421-4800 ▪ 1-800-927-LGCD ▪ Fax (401)421-0643

<u>Ref to OIG Evaluation</u>                    <u>Auditee Comments</u>

Mr. Antone L. Giordano, General Partner
January 13, 2003
Page 2

<u>Our Responsibilities (continued)</u>

We will perform tests of control, as required by the Guide, to evaluate the effectiveness of the design and operation of internal control relevant to preventing or detecting material noncompliance with specific requirements applicable to HUD-assisted programs. Our procedures will be substantially less in scope than would be necessary to render an opinion on internal control and, accordingly, we will not express an opinion on internal control.

We will perform procedures, as required by the Guide, to test compliance with specific requirements applicable to transactions related to non-major HUD-assisted programs, if any, selected as part of performing our audit of the financial statements or our consideration of internal control used to administer HUD-assisted programs, and to test compliance with Fair Housing and Non-Discrimination requirements applicable to HUD-assisted programs. Our procedures will be substantially less in scope than would be necessary to render an opinion and, accordingly, we will not express an opinion. However, we will report instances of noncompliance, or report that the results of our tests disclosed no instances of noncompliance that are required to be reported under the Guide.

An audit is not designed to detect error or fraud, including irregularities, illegal acts or theft that is immaterial to the financial statements. Accordingly, we will not design our audit or perform procedures to detect error or fraud that is not material to the financial statements. Error or fraud is considered to be material only if its magnitude, individually or in the aggregate, is such that a reasonable person relying on management's presentation of the Partnership's financial statements would be influenced by its inclusion or omission. Materiality is determined annually and applies to the Partnership's financial statements taken as a whole. Our engagement excludes services designed to detect error or fraud that is not material to the Partnership's financial statements, which are available under a separate engagement at substantial additional cost.

If, for any reason, we are unable to complete the audit or form an opinion on the Partnership's financial statements or on its compliance with specific requirements applicable to its major HUD-assisted program, we may decline to express an opinion or issue reports as a result of this engagement.

We will also prepare the Partnership's federal and state income tax returns for the year ended December 31, 2002. The income tax returns will be prepared from the Partnership's general ledger. We will not express an opinion or other form of assurance on the income tax returns.

We will use our judgment in resolving questions where the tax laws are unclear or where there may be conflict between the taxing authorities' interpretation of the law and what seem to be other supportable positions. We will discuss alternatives with Mr. John Montecalvo and we resolve such questions in the Partnership's favor, if Mr. Montecalvo and we believe there is a reasonable justification for the position being taken.

In accordance with requirements of the Secretary of Health and Human Services (HHS), we will retain our books and records (that are necessary to certify the nature and extent of the fee for our services) for the necessary time periods and allow the necessary access to such books and records by the duly authorized agents of the Secretary of HHS, the Comptroller General and their duly authorized representatives.

75

Ref to OIG Evaluation                    Auditee Comments

Mr. Antone L. Giordano, General Partner
January 13, 2003
Page 3

### Our Responsibilities (continued)

Our workpapers for this engagement are the property of LGC&D and constitute confidential information. However, as required by Government Auditing Standards, we are required to make certain workpapers and other documents in our possession related to our audit reports, or photocopies thereof, available to duly authorized agents of the Comptroller General of the United States, the Secretary of HUD, the HUD Inspector General, or other cognizant agencies, and their duly authorized representatives, upon request for their regulatory oversight purposes. In addition, we may be requested by third parties to make certain workpapers and other documents in our possession related to this engagement (or photocopies thereof) available to duly authorized agents of Secretary of HHS, the Comptroller General and their duly authorized representatives and/or representatives of other third party auditors. We retain our workpapers and other documents for the necessary time periods and provide to the appropriate duly authorized agents and their representatives access to, or photocopies of, requested workpapers and other documents under the supervision of LGC&D personnel and at a location designated by our Firm.

Your signing this letter constitutes both your acknowledgment of our requirement to provide such access and your permission to make requested workpapers and other documents, or to provide photocopies thereof, available to the appropriate duly authorized agents and their representatives for the purpose described in the preceding two paragraphs. We will advise Mr. Montecalvo if such requests are made.

As required by Government Auditing Standards, we have previously provided you with a copy of our Firm's latest Peer Review Report dated June 7, 2001.

### Other Communications to the Partnership

We will communicate in writing to Mr. Montecalvo and/or you any matters coming to our attention that, in our judgment, represent significant deficiencies in the Partnership's internal control, which could adversely affect its ability to record, process, summarize, and report financial data.

We also will communicate in writing to Mr. Montecalvo and/or you any significant irregularities or fraud that may come to our attention, as well as any comments relative to third-party reimbursement planning, compliance and/or strategies.

### The Partnership's Responsibilities

The management of the Partnership is responsible for the financial statements and for maintaining effective internal control that will, among other things, help assure the preparation of financial statements in conformity with accounting principles generally accepted in the United States of America and help assure that HUD-assisted programs are managed in compliance with applicable laws and regulations. Management also is responsible for identifying and ensuring that the Partnership complies with the provisions of laws and regulations and contracts, and specific program requirements related to its activities, including HUD-assisted programs.

<u>Ref to OIG Evaluation</u>                    <u>Auditee Comments</u>

Mr. Antone L. Giordano, General Partner
January 13, 2003
Page 4

<u>The Partnership's Responsibilities (continued)</u>

Although we can advise the Partnership, Sterling Health Care Management Co., LLC (Sterling), the management agent, and Mr. Montecalvo, it is management's responsibility to adopt sound accounting policies, maintain an adequate and efficient accounting system, safeguard assets, and devise policies to detect and prevent fraud.

Management's and Sterling's responsibility for financial reporting includes establishing a process to prepare the accounting estimates included in the financial statements. Management judgments are necessary, and are typically based on its knowledge and experience about past and current events, and its expected courses of action.

Management and Sterling are responsible to make available to us all correspondence, inspection and other reports issued by HUD, as well as the Partnership's response, corrective action plan, or similar correspondence to HUD.

In the event that we issue a schedule of findings and questioned costs, HUD requires that the Partnership and the management agent develop and transmit to them a corrective action plan. In addition, to the extent there were findings from prior years, the Partnership and the management agent are required to comment on the status of corrective action taken on these prior findings.

At the completion of our audit, management will provide us with a representation letter confirming, among other things, that management is responsible for the Partnership's financial statements and compliance with provisions of laws, regulations and contracts, and specific program requirements, that have a direct and material effect on the financial statements and HUD-assisted programs, and the detection and prevention of fraud resulting from both fraudulent financial reporting and misappropriation of assets.

Management is responsible for adjusting the financial statements to correct material misstatements and for affirming to us in the representation letters that the effects of any uncorrected misstatements aggregated by us during the current engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the Partnership's financial statements taken as a whole.

Management and Sterling are responsible for making all financial records and related information available to us. The Partnership, its General Partner and Sterling agree to release, indemnify, defend, and hold harmless LGC&D and its principals and personnel from any liability or claim, and pay any legal fees and other costs incurred by LGC&D, as a result of LGC&D's reliance on any misrepresentations made by the Partnership, its General Partner or Sterling.

Ref to OIG Evaluation                    Auditee Comments

Mr. Antone L. Giordano, General Partner
January 13, 2003
Page 5

### The Partnership's Responsibilities (continued)

We will provide Ms. Jeanne Frappier with a list of required schedules before the audit begins. Ms. Frappier and the Partnership's staff will prepare the requested schedules and analyses. Timely completion of the audit depends on preparing schedules and analyses timely and accurately, and providing us on a concurrent basis with trial balances, subsidiary listings of accounts receivable and accounts payable, and other supporting data for the year ended December 31, 2002. If there are delays in preparing this material, if schedules must be continually revised, and/or if we are not able to perform on a concurrent basis the financial statement audit, our fees will increase. We will advise Mr. Montecalvo of any difficulties or delays in completing the engagement.

### Fees and Payment Arrangements

Our fee for the aforementioned services will be $32,000, plus out-of-pocket costs. Invoices will be submitted every two weeks as the work progresses. We shall make every effort to keep our time and expenses to the absolute minimum commensurate with the needs of this engagement.

The Partnership will continue to make minimum weekly payments to LGC&D of $2,000. Should the Partnership fail to make any required weekly payment, a revised weekly payment arrangement will be negotiated with Mr. Montecalvo. In addition, we reserve the right to suspend our audit and/or not release the financial statements until such time as the Partnership brings the weekly payments current on a cumulative basis.

### Additional Services

We will compile, from information you provide, the Partnership's third-party cost reporting forms for Medicaid (Form BM-64) and Medicare (Form CMS-2540) for the year ended December 31, 2002. We will not audit or review these cost reports and will not express an opinion or any other form of assurance on them.

We will electronically submit the Partnership's annual financial statements and supplemental data to HUD.

We will use our judgment in resolving questions where either the reimbursement rules or tax law are unclear or where there may be conflict between the reimbursement or taxing authorities' interpretation of the law and what seem to be other supportable positions. We will resolve such questions in your favor, if there is a reasonable justification for the position being taken, and discuss alternatives with you.

We shall also be available for meetings, in person or via telephone, and as you may request, to discuss tax and reimbursement matters relating to the aforementioned companies.

Ref to OIG Evaluation                                    Auditee Comments

Mr. Antone L. Giordano, General Partner
January 13, 2003
Page 6

### Additional Services (continued)

Our fee for these above mentioned services will be based on our customary rates for these services, plus out-of-pocket costs. An invoice will be submitted every two weeks as work progresses and is due when presented.

We shall issue separate engagement letters for any additional services you may request, not covered by this letter.

### Agreement

Please sign and return the enclosed two copies of this letter to signify your understanding of the arrangements and as authorization for us to proceed.

We look forward to a continuing and mutually beneficial association.

Very truly yours,

LEFKOWITZ, GARFINKEL, CHAMPI & DeRIENZO P.C.

Michael E. Criscione, Principal
Certified Public Accountant

MEC/mp

ACCEPTED:

By: _____

Date: ____2/24/03____

79

Ref to OIG Evaluation                    Auditee Comments



Lefkowitz, Garfinkel, Champi & DeRienzo P.C.
Certified Public Accountants / Business Consultants

Principals
Jerome L. Lefkowitz, CPA
Stephen M. Garfinkel, CPA
Frank J. Champi, CPA
Richard J. DeRienzo, CPA
Jerrold N. Dorfman, CPA, PFS
Peter Merel, CPA
Stephen W. Gerencia, CPA
Susan R. Johnson, CPA
Michael E. Criscione, CPA

February 13, 2003

Mr. Antone L. Giordiano, General Partner
Mount St. Francis Health Center
4 St. Joseph Street
Woonsocket, RI 02895

RE:     Engagement Letters – Mount St. Francis Health Center (the Partnership)
        401(K) Plan and Electronic Submission of Financial Statements to HUD
        Year Ended December 31, 2002

Dear Antone:

The following fee ranges will be incorporated into our original engagement letters dated January 13, 2003 by way of this addendum.

### Fees

The fee for the Partnership's 401(K) Plan audit will be in the range of $3,500 to $4,000 plus customary out-of-pocket costs.    The fee for the electronic submission of the Partnership's financial statements to HUD will be approximately $750.

### Agreement

If this addendum correctly expresses your understanding, please indicate your approval by signing and returning the enclosed two copies of this letter along with two copies of the original engagement letter to me.

Very truly yours,

LEFKOWITZ, GARFINKEL, CHAMPI & DeRIENZO P.C.

Michael E. Criscione, Principal
Certified Public Accountant

ACCEPTED:

By: _____

Date: _____

10 Weybosset Street ▪ Suite 700 ▪ Providence, Rhode Island 02903 ▪ Tel (401) 421-4800 ▪ 1-800-927-LGCD ▪ Fax (401) 421-0643

Ref to OIG Evaluation                    Auditee Comments



**Lefkowitz, Garfinkel, Champi & DeRienzo P.C.**
Certified Public Accountants / Business Consultants

Principals
Jerome L. Lefkowitz, CPA
Stephen M. Garfinkel, CPA
Frank J. Champi, CPA
Richard J. DeRienzo, CPA
Jerrold N. Dorfman, CPA, PFS
Peter Menzi, CPA
Stephen W. Garozzia, CPA
Susan R. Johnson, CPA
Michael E. Crescioni, CPA

January 13, 2003

Mr. Antone L. Giordano, General Partner
Mount Saint Francis Health Center Associates
4 Joseph Street
Woonsocket, RI  02895

Dear Mr. Giordano:

We are pleased to confirm our understanding of the nature and limitations of the services we are to provide for Mount Saint Francis Health Center Associates (the Partnership) for the year ended December 31, 2002.

We will apply the agreed-upon procedure, which was agreed to by the Partnership and the U.S. Department of Housing and Urban Development, Real Estate Assessment Center (REAC).

We will compare the electronic submission with the corresponding hard copy documents. The results of the performance of our agreed-upon procedure indicate agreement or non-agreement of electronically submitted information and hard copy documents.

This engagement is solely to assist REAC in determining whether the electronic submission of certain information agrees with the corresponding hard copy documents included within the *Consolidated Audit Guide for Audits of HUD Programs* issued by the U.S. Department of Housing and Urban Development, the *Uniform Financial Reporting Standards for HUD Housing Programs*, and the *Industry User Guide for the Financial Assessment Subsystem – Submission (FASSUB)* reporting package. Our engagement to apply agreed-upon procedures will be performed in accordance with the attestation standards established by the American Institute of Certified Public Accountants. The sufficiency of the procedures is solely the responsibility of the specified users of the reports. Consequently, we make no representation regarding the sufficiency of the procedures described above either for the purpose for which these reports have been requested or for any other purpose. If, for any reason, we are unable to complete the procedures, we will describe any restrictions on the performance of the procedures in our reports.

Because the agreed-upon procedures specified above do not constitute an examination, we will not express an opinion on compliance with the electronic submission requirements. In addition, we have no obligation to perform any procedures beyond those specified above.

10 Weybosset Street • Suite 700 • Providence, Rhode Island 02903 • Tel (401) 421-4800 • 1-800-927-LGCD • Fax (401) 421-0643

Ref to OIG Evaluation                              Auditee Comments

Mr. Antone L. Giordano, General Partner
January 13, 2003
Page 2

A copy of the reporting packages required by HUD, which includes the auditors' reports, is available in its entirety from the Partnership. We take no responsibility for the security of the information transmitted electronically to the U.S. Department of Housing and Urban Development, REAC.

Our reports are intended solely for the information and use of the Partnership and the U.S. Department of Housing and Urban Development, REAC, and is not intended to be and should not be used by those who have not agreed to the procedures and taken responsibility for the sufficiency of the procedures for their purposes.

At the conclusion of our engagement, we will request certain written representations from management about compliance with the electronic submission requirements. You agree to hold us harmless from any liability and costs from misrepresentations made to us by management.

We understand that you will provide us access to the Partnership's electronic submissions and corresponding hard copy documents for the year ended December 31, 2002, we deem necessary to complete our engagement.

The workpapers for this engagement are the property of Lefkowitz, Garfinkel, Champi & DeRienzo P.C. (LGC&D) and constitute confidential information. However, we may be requested to make certain workpapers available to the Secretary of Housing and Urban Development, the U.S. Department of Housing and Urban Development (HUD) Inspector General and the General Accounting Office (GAO) or their representatives, pursuant to authority given to them by law or regulation. Access to such workpapers will be provided under the supervision of LGC&D's personnel. Furthermore, upon request, we may provide photocopies of selected workpapers to HUD or GAO representatives. HUD and the GAO may distribute the photocopies or information contained therein to others, including other governmental agencies.

* Our fees for these services will be based on the actual time spent at our standard hourly rates, plus travel and other out-of-pocket costs such as report reproduction, typing, postage, etc. Our standard hourly rates vary according to the degree of responsibility involved and the experience level of the personnel assigned to your audit. Our invoices for these fees will be rendered upon completion and are payable upon presentation. Ms. Tammy Anderson from our office will be your contact person for these engagements.

82

Ref to OIG Evaluation                    Auditee Comments

Mr. Antone L. Giordano, General Partner
January 13, 2003
Page 3

We appreciate the opportunity to be of service to you and believe this letter accurately
summarizes the significant terms of our engagement. If you have any questions, please
let us know. If you agree with the terms of our engagement as described in this letter,
please sign the enclosed copy of this letter and return it to us.

Very truly yours,

LEFKOWITZ, GARFINKEL, CHAMPI & DeRIENZO P.C.


Michael E. Criscione, Principal
Certified Public Accountant

MEC/mp

ACCEPTED:

By: _____

Date: _____2/24/03_____

G. Chorl Dau/67 0968-2091 NCFD DPJ3 Ju Pmma Hulfe Costs Assa/OSse Benira/RKE/dgrral/Upm Prnodars Engagmul Liles doc

83

Ref to OIG Evaluation                    Auditee Comments



Lefkowitz, Garfinkel, Champi & DeRienzo P.C.
Certified Public Accountants / Business Consultants

Principals
Jerome E. Lefkowitz, CPA
Stephen M. Garfinkel, CPA
Frank J. Champi, CPA
Richard J. DeRienzo, CPA
Jerold N. Nordman, CPA, PFS
Peter Mezei, CPA
Stephen W. Gianesin, CPA
Susan R. Johnson, CPA
Michael E. Criscione, CPA

February 13, 2003

Mr. Antone L. Giordiano, General Partner
Mount St. Francis Health Center
4 St. Joseph Street
Woonsocket, RI  02895

RE:    Engagement Letters – Mount St. Francis Health Center (the Partnership)
       401(K) Plan and Electronic Submission of Financial Statements to HUD
       Year Ended December 31, 2002

Dear Antone:

The following fee ranges will be incorporated into our original engagement letters dated January 13, 2003 by way of this addendum.

                                    Fees

The fee for the Partnership's 401(K) Plan audit will be in the range of $3,500 to $4,000 plus customary out-of-pocket costs.    The fee for the electronic submission of the Partnership's financial statements to HUD will be approximately $750.

                                 Agreement

If this addendum correctly expresses your understanding, please indicate your approval by signing and returning the enclosed two copies of this letter along with two copies of the original engagement letter to me.

Very truly yours,

LEFKOWITZ, GARFINKEL, CHAMPI & DeRIENZO P.C.

Michael E. Criscione, Principal
Certified Public Accountant

ACCEPTED:

By:  _____

Date:  _____

10 Weybosset Street ▪ Suite 700 ▪ Providence, Rhode Island 02903 ▪ Tel (401) 421-1900 ▪ 1-800-927-LGCD ▪ Fax (401) 421-0643

Ref to OIG Evaluation                    Auditee Comments

Tab 2



U. S. Department of Housing and Urban Development

Providence Office, Region I
John O. Pastore Federal Building, Room 330
2 Exchange Terrace
Providence, Rhode Island 02903-1785

AUG 18 '93

John J. Montecalvo, Controller
Coventry Health Ctr. and
   Mount Saint Francis Assoc.
190 Broad St.
Providence, RI   02903

Dear Mr. Montecalvo:

    Enclosed, please find executed copies of form HUD-9839-B (Project Owner's & Management Agent's Certification for Multifamily Housing Projects for Identity-of-Interest or Independent Management Agents) for both Consultants Inc., and Health Management Services, who provide managerial services to Coventry Health Center (Project No. 016-43050). There is also an executed copy of this form for Antonio L. Giordano as Managing General Partner for Mount Saint Francis Health Center (Project No. 016-43044).

    Also enclosed, please find executed copies of form HUD-9832 (Management Entity Profile) for both Coventry Health Center and Mount Saint Francis.

    Inquiries may be directed to Christine Keshura of my staff at 528-5255.

                        Very sincerely yours,

                        Claire Oberman
                        Acting Director
                        Housing Management Division

Enclosures

85

Ref to OIG Evaluation                    Auditee Comments

---

**Project Owner's & Management Agent's Certification of Multifamily Housing Projects for Identity-of-nterest or Independent Management Agents**

U.S. Department of Housing and Urban Development
Office of Housing

OMB Approval No. 2502-0305 (exp. 7/31/92)

ublic reporting burden for this collection of information is estimated to average 0.16 hours per response, including the time for reviewing instructions, searching existing data sources, athering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this ollection of information, including suggestions for reducing this burden, to the Reports Management Officer, Office of Information Policies and Systems, U.S. Department of Housing nd Urban Development, Washington, D.C. 20410-3600 and to the Office of Management and Budget, Paperwork Reduction Project (2502-0305), Washington, D.C. 20503.

| me: | FHA project no: | Date: |
|---|---|---|
| Mount St. Francis Health Center | 016-43044 | 4/20/93 |

| ly, State: | Section 8 no: |
|---|---|
| 4 St. Joseph Street, Woonsocket, RI | N/A |

cting on behalf of Mount St. Francis Associates the Project Owner (Owner), and Antonio L. Giordano, the Management Agent (Agent), we make the following certifications and agreements to the United States Department of Housing and Urban Development (HUD) regarding management of the above project.

We certify that:

a. We have executed or will execute, within 30 days after receiving the approval(s) required by paragraph b below, a Management Agreement for this project The Agreement provides / will provide that the Management Agent will manage the project for the term and fee described below. Changes in the fee will be implemented only in accordance with HUD's requirements.

(1) Term of Agreement: Coterminous with Partnership Agreement to expire when PA expires

(2) Fees:

(a) N/A % of residential income collected;

(b) N/A % of commercial income collected;

(c) N/A % of miscellaneous income collected (This percentage must not exceed the percentage in (2)(a) above).

(d) Special Fees No ☐ Yes ☒ If yes, describe in paragraph 4 of Attachment 1.

(3) Calculation of Estimated Yield (See Attachment 1.)

b. We will disburse management fees from project income only after:

(1) We have submitted this Certification to HUD;

(2) HUD has approved the Agent to manage this project; and

(3) HUD has approved the management fee (if required).

c. We understand that no fees may be earned or paid after HUD has terminated the Management Agreement.

d. If HUD notifies me of an excessive management fee, I, the Agent, will within 30 days of HUD's notice either:

(1) Reduce the compensation to an amount HUD determines to be reasonable and

(2) Require the administrator to refund to the project all excessive fees collected, or

(3) Appeal HUD's decision and abide by the results of the appeal process, making any required reductions and refunds within 30 days after the date of this decision letter on the appeal.

e. If HUD holds the residential management fee yield harmless under the transition provisions of Chapter 2, Section VI of HUD Handbook 4381.5,

(1) We understand that HUD will adjust the management fee percentage each time HUD approves a rent increase.

(2) We agree to be bound by that percentage until the next rent increase or until HUD approves a different fee, pursuant to our request.

We will, if the project is subsidized by HUD, select and admit tenants, compute tenant rents and assistance payments, recertify tenants and carry out other subsidy contract administration responsibilities in accordance with HUD Handbook 4350.3 and other HUD instructions.

We agree to:

a. Comply with this project's Regulatory Agreement, Mortgage & Mortgage Note, and any Subsidy Contract or Workout / Modification Agreement.

imply with HUD handbooks, notices or other policy directives that .tate to the management of the project.

c. Comply with HUD requirements regarding payment and reasonable-ness of management fees and allocation of management costs between the management fee and the project account (This does not apply to projects listed in Paragraph 2-1B of HUD Handbook 4381.5).

d. Refrain from purchasing goods or services from entities that have identity-of-interest with us unless the costs are as low as or lower than arms-length, open-market purchases.

4. The Agent agrees to:

a. Assure that all expenses of the project are reasonable and necessary.

b. Exert reasonable effort to maximize project income and to take advantage of discounts, rebates and similar money-saving techniques.

c. Obtain contracts, materials, supplies and services, including the preparation of the annual audit, on terms most advantageous to the project.

d. Credit the project with all discounts, rebates or commissions (including any sales or property tax relief granted by the state or local govern-ment) received.

e. Obtain the necessary verbal or written cost estimates and document the reasons for accepting other than the lowest bid.

f. Maintain copies of such documentation and make such documentation available for your inspection during normal business hours.

g. Invest project funds that HUD policies require to be invested and take reasonable effort to invest other project funds unless the owner specifically directs the Agent not to invest those other funds.

5. We certify that the types of insurance policies checked below are in force and will be maintained to the best of our ability at all times. Fidelity bonds and hazard insurance policies will name HUD as an additional loss payee. Note: For any box not checked, attach an explanation as to why you cannot obtain that type of insurance. Such situations should be extremely rare.

a. ☒ Fidelity bond or employee dishonesty coverage for $300,000

(1) all principals of the Agent and;

(2) all persons who participate directly or indirectly in the manage-ment and maintenance of the project and its assets, accounts and records. Coverage will be at least equal to the project's gross potential income for two (2) months.

b. ☒ Hazard insurance coverage in an amount required by the project's Mortgage. See Attached Ltr. 10/23/91.

c. ☒ Public liability coverage with the Agent designated as one of the insured.

6. The Agent agrees to:

a. Furnish a response to HUD's management review reports, physical inspection reports and written inquiries regarding the project's annual financial statements or monthly accounting reports within 30 days after receipt of the report or inquiry.

b. Establish and maintain the project's accounts, books and records in accordance with:

(1) HUD's administrative requirements;

(2) generally accepted accounting principles; and

(3) in a condition that will facilitate audit.

7. We agree that:

a. All records related to the operation of the project, regardless of where they are housed, shall be considered the property of the project.

b. HUD, the General Accounting Office (GAO), and those agencies' representatives may inspect:

(1) any records which relate to the project's purchase of goods or services,

Ref to OIG Evaluation

Auditee Comments

(2) the records of the Owner and the Agent, and

(3) the records of companies having an identity-of-interest with the owner and the agent.

c. The following clause will be included in any contract entered into with an identity-of-interest individual or business for the provision of goods or services to the project: "Upon request of HUD or (name of owner or Agent), (name of contractor or supplier) will make available to HUD, at a reasonable time and place, its records and records of identity-of-interest companies which relate to goods and services charged to the project. Records and information will be sufficient to permit HUD to determine the services performed, the dates the services were performed, the location at which the services were performed, the time consumed in providing the services, the charges made for materials, and the per-unit and total charges levied for said services." The owner agrees to request such records within seven (7) days of receipt of HUD's request to do so.

8. We certify that any Management Agreement does not contain the type of "hold harmless" clause prohibited by HUD.

9. We agree to include the following provisions in the Management Agreement and to be bound by them:

a. HUD has the right to terminate the Management Agreement for failure to comply with the provisions of this Certification, or other good cause, thirty days after HUD has mailed the owner a written notice of its desire to terminate the Management Agreement.

b. In the event of a default under the Mortgage, Note or Regulatory Agreement, HUD has the right to terminate the Management Agreement immediately upon HUD's issuance of a notice of termination to the Owner and Agent.

c. If HUD exercises this right of termination, I, the Owner, agree to promptly make arrangements for providing management that is satisfactory to HUD.

d. If there is a conflict between the Management Agreement & HUD's rights and requirements, HUD's rights & requirements will prevail.

e. If the Management Agreement is terminated I, the Agent, will give to the Owner all of the project's cash, trust accounts investments and records within thirty (30) days of the date the Management Agreement is terminated.

10. I, the Owner, agree to submit a new Management Certification to HUD before taking any of the following actions:

a. Authorizing the agent to collect a fee different from the percentages fees and any special fees specified in Paragraph 1 of this Certification;

b. Changing the expiration date of the Management Agreement.

c. Renewing the Management Agreement.

d. Permitting a new Agent to operate the project.

e. Permitting a new Agent to collect a fee.

f. Undertaking self-management of the project.

11. We agree to:

a. Comply with all Federal state, or local laws prohibiting discrimination against any persons on grounds of race, color, creed, familial status, handicap, sex or national origin, including Title VI of the Civil Rights Act of 1964, Fair Housing Act, , Executive Order 11063 and all regulations implementing these laws.

b. When the head or spouse is otherwise eligible, give families with children equal consideration for admission.

c. Give handicapped persons priority for subsidized units that were built and equipped specifically for the handicapped.

d. If the project receives any form of direct Federal financial assistance, comply with the provisions of Section 504 of the Rehabilitation Act of 1973, as amended, the Age Discrimination Act of 1975 and all regulations and administrative instructions implementing these laws. The Agent understands that these laws and regulations prohibit discrimination against applicants or tenants who are handicapped or of a certain age.

Furnish HUD's Office of Fair Housing and Equal Opportunity any reports and information required to monitor the project's compliance with HUD's fair housing and affirmative marketing requirements (including HUD Form 949, if applicable).

f. Not discriminate against any employee, applicant for employment or contractor because of race, color, handicap, religion, sex or national origin.

g. Provide minorities, women and socially and economically disadvantaged firms equal opportunity to participate in the project's procurement and contracting activities.

h. If the project receives any form of direct Federal financial assistance, comply with Section 3 of the Housing and Urban Development Act of 1968 and its implementing regulations. I, the Agent, understand that this law and the regulations require the project to make training, employment and contracting opportunities available, to the greatest extent feasible, to lower-income project area residents and small businesses.

12. We certify that we have read and understand HUD's definition of "identity-of-interest" and that the statement(s) checked and information entered below are true. (Check box a or boxes b and / or c.)

a. ☐ No identity-of-interest exists among the Owner, the Agent and any individuals or companies that regularly do business with the project.

b. ☒ Only individuals and companies listed in Section 11a of the Management Entity Profile have an identity-of-interest with the Agent.

c. ☒ Only the individuals and companies listed below have an identity-of-interest with the Owner. (Show the name of the individual or company; list the services rendered; and describe the nature of the identity-of-interest relationship. Attach additional sheets, if necessary.)

13. I, the Agent, certify & agree:

a. that the Management Entity Profile, dated 4/20/93, is accurate and current as of the date of this Certification.

b. To submit an updated profile whenever there is a significant change in the organization or operations of the Management Entity.

14. The items checked below are attached:

☒ Attachment 1–Calculation of Est. Yields from Proposed Mgt Fees

☐ New Management Entity Profile

☐ Updated Management Entity Profile

☒ Other (Specify) Owner Identity of Interes Co's = Gregory Building Co, My Place Inc., Construction Software Inc., Consultants Inc.

**Warnings:**

There are fines and imprisonment—$10,000/5years—for anyone who make false, fictitious, or fraudulent statements or entries in any matter within the jurisdiction of the Federal Government (18 U.S.C 1001).

There are fines and imprisonment—$250,000/5years—for anyone who misuses rents & proceeds in violation of HUD regulations relative to this project. This applies when the mortgage note is in default or when the project is in a nonsurplus cash position (12 U.S.C 1715z-9).

HUD may seek a "double damages" civil remedy for the use of assets or income in violation of any Regulatory Agreement or any applicable HUD regulations (12 U.S.C 1715z-4a).

HUD may seek additional civil money penalties to be paid by the mortgagor through personal funds for :

(1) Violation of an agreement with HUD to to use nonproject funds for certain specified purposes as a condition of receiving transfers of physical assets, flexible subsidy loan, capital improvement loan, modification of mortgage terms or workout. The penalties could be as much as the HUD Secretary's loss at foreclosure sale or sale after foreclosure.

(2) Certain specific violations of the Regulatory Agreement, the penalties could be as much as $25,000 per occurrence (12 U.S.C 1735f-15).

By Project Owner's Name, title, signature, date:

Antonio L. Giordano – Managing G.P.

By Management Agent's Name, title, signature, date:

Antonio L. Giordano

87

Ref to OIG Evaluation                    Auditee Comments

| Name: | | FHA Project Number: | Date: |
|---|---|---|---|
| unt St. Francis Health Center | | 016-43044 | 4/20/93 |

Field Office Use Only (Check all boxes that apply)

p    review of the management fee was:         ☒ Required      ☐ Not required

The management fees quoted in paragraph 1a and explained in Attachment 1 of this Certification are approved.

The management fees quoted in Paragraph 1a and explained in Attachment 1 of this Certification are not approved. The attached letter, dated
_____, explains the reasons for this disapproval and sets forth the allowable management fees.

The residential management fee Percentage is held harmless at _____%.

The residential management fee Yield is capped at $_____PUPM. Each time you approve a rent increase, adjust the management fee Percentage to maintain this yield and enter the information required below.

| Effective Date of New Fee %* | Monthly Rent Potential | Collections % Assumed** | Adjusted Management Fee Percentage |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

\* This should be the same date the rent increase is effective.
\*\* ___ unless you approve a different percentage.

| oan Servicer | | By Supervisory Load Servicer/Loan Management Branch Chief | |
|---|---|---|---|
| aure | Date | Signature | Date |
| Christine Keshura | 8/17/93 | | 8/17/93 |
| | | Name | |
| hristine Keshura | | Claire Oberman | |
| | | Title | |
| oan Management Specialist | | Chief, LM/PD | |

Page 3 of 4                                        form HUD-9839-B

88

Ref to OIG Evaluation                    Auditee Comments

Attachment 1—Calculation of Estimated Yields from Proposed Management Fees

| Project Name: St. Francis Health Center | FHA Project No.: 016-43-44 | | Date: 4/20/93 | |
|---|---|---|---|---|
| Residential Fee | | | 2. Commercial Fee (Describe commercial space, how it is used and what services management provides.) | |
| ly residential rent potential (from Part A a most recent HUD-approved Rent Schedule | $ | N/A | N/A | |
| Line 1a times .95** | $ | | | |
| Percentage fee | | % | | |
| Monthly residential fee yield (Line 1b times 1c) | $ | | | |
| Total number of residential units (include rent-free units.) | | N/A units | | |
| Residential fee yield per unit per month (Line 1d divided by 1e.) | $ | PUPM | | |

Note: Generally collections must be estimated at 95% of gross potential. If I use a lower percentage, attach an explanation for the collections centage used. Make sure that any assumption of a lower collections base is not compensate the agent for services for which a special fee will be d.

| a. Monthly commercial rent potential (from Part E of the most recent HUD-approved Rent Schedule) | $ N/A | |
|---|---|---|
| b. Percentage fee | | % |
| c. Commercial fee yield (Line 2a times 2b) | $ | |

Miscellaneous Fee

Percentage fee (not to exceed the residential income fee percentage in Line 1c) %

N/A

List any miscellaneous income on which HUD allows a fee to be taken, but on which you have agreed a fee will not be paid.

N/A

Special Fees
ar dollar amount(s), purpose(s) and time period(s) covered. Describe performance standards and target dates for accomplishment of special tasks. (Attach itional sheets, if needed.)

ie Agent, as Managing General Partner, is compensated at the rate of 3%
: Net Patient Revenue, for services required by the special purpose nature
: the facility. See Adler Pollock & Sheehan letter to Providence Office
inager dated May 5, 1989 and Powell, Goldstein, Frazer and Murphy letter
i Providence office Manager dated July 24, 1992.
ie compensation to the Agent is exclusive of compensation to Health
inagement Services Inc. – also at the rate of 3% of Net Patient Revenue
ider a Management Agreement dated November 1, 1984 as amended as of
iril 1, 1989.

e: Projects listed in Paragraph 2-1B of HUD Handbook 4381.5 REV-1 may quote management fees in ways other than as shown in this attachment.

Page 4 of 4                                      form HUD-9839-B

Ref to OIG Evaluation                                        Auditee Comments

Case 1:09-cv-00432-ML-PAS    Document 12-5    Filed 10/07/09    Page 23 of 37 PageID #: 404

Ref to OIG Evaluation                    Auditee Comments

Ref to OIG Evaluation                    Auditee Comments

nt Name                                                                                    Date

If applicable, describe how the home office supervises supervisory staff
(e.g., property managers, occupancy specialists, maintenance supervisors), who operate out of branch offices.

Describe how the company trains its employees in the areas listed below. Discuss both on-going training and initial training provided when the employee is hired. Specify the frequency and duration of the training and who/what organization conducts the training. Discuss training for both supervisory and front-line staff.
a.  Property management practices.

b.  Financial and recordkeeping requirements.

c.  Civil rights and fair housing laws.

d.  Occupancy requirements in HUD Handbook 4350.3, *Occupancy Requirements of Subsidized Multifamily Housing Programs* (if the company manages subsidized projects).

Has an owner of a HUD-related project, at any time during the past three years, cancelled a property management contract held by the company?   ☐ Yes   ☐ No

During the past three years, how many HUD-related projects have not renewed their management contracts with the company? (Number)_____

Explain the reasons for any cancellations or failure to renew and identify the projects involved.

## SEE ATTACHMENT

Page 3 of 4                                                                          form HUD-9832

92

Ref to OIG Evaluation                    Auditee Comments

List all HUD Field Offices that have jurisdiction over the projects included in 5a. For companies that operate in more than five Field Office jurisdictions, identify the five jurisdictions where the greatest number of your HUD-related projects are located.

List all State Agencies in whose jurisdiction you have managed or are managing State Agency-financed projects. For companies that operate in more than five States, identify the five where the greatest number of your State Agency projects are located.

List all FmHA offices in whose jurisdiction you have managed or are managing FmHA projects. For companies that operate in more than five FmHA jurisdictions, identify the five there the greatest number of your FmHA projects are located.

fication:  The undersigned hereby certifies that the statements and information contained in this profile are true and correct.

ing:  18 U.S.C. 1001 provides, among other things, that whoever knowingly and willingly makes or uses a document or writing containing any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of the United States, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

d       magement Entity Representative

| ture | | Date 6/28/93 |
|---|---|---|
| Name | Title | |
| Antonio L. Giordano | Individually | |

93

Ref to OIG Evaluation                    Auditee Comments

MOUNT SAINT FRANCIS HEALTH CENTER
FHA No. 016-43044

MANAGEMENT AGENT PROFILE -- Attachment

The services which Antonio L. Giordano, the
Managing General Partner, provides or obtains are peculiar
to the project's status as a special-purpose and regulated
facility, distinct from a multifamily rental project.
Principal among such services are monitoring and advising
with respect to all matters necessary and appropriate to
maintaining in full force and effect the facility's license
from the Rhode Island Department of Health to operate the
facility as a nursing home ( see paragraph 9 (h) (1) of the
regulatory agreement), reviews and approval of operating
budgets prepared by the managing agent, reviews and approval
of Medicare and Medicaid reports and cost reports, including
participation in presentations to the Department of Human
Services in connection with establishment of the
reimbursement of rate, establishment, monitoring and
maintaining credit relationships with financial
institutions, contractors and suppliers, and arrangement of
all necessary insurance coverages, including participation
in all negotiations or appeals with respect to ratings and
rates pertinent to such required and appropriate coverages.

The Managing General Partner subcontracts with
Consultants, Inc., an entity controlled by the Managing
General Partner, for a substantial portion of the above
services.  The Managing General Partner is President of
Consultants, Inc.  Other personnel of Consultants, Inc.,
engaged in the provisions of the above-described services
include the following:

-- John J. Montecalvo, Controller and Chief
Financial Officer.  Mr. Montecalvo is a licensed nursing
home administrator under license issued by the State of
Rhode Island # 572 in 1983.  Bachelors of Science in
Business Administration from Bryant College, Masters of
Business Administration from Boston University, and Masters
of Business Administration from Northwestern University.

-- Antonio A. Giordano, Financial Analysis.
Bachelors of Science in Business Administration from
Catholic University and a Masters of Science in Real Estate
Development& Investment from New York University.

94

Ref to OIG Evaluation                    Auditee Comments

Tab 3

$\mathcal{CL}$: PF 4/7/02

## MANAGEMENT AGREEMENT

This agreement made and entered into as of January 1, 1995 by and between Mount St. Francis Associates d/b/a Mount St. Francis Health Center, a Rhode Island Limited Partnership (herinafter called "OWNER"), and Sterling Health Care Management Company, LLC, a Rhode Island Limited Liability Company, (hereinafter called "MANAGER").

### 1.    Introduction

1.1    OWNER desires to arrange for the management and operation of Mount St. Francis Associates, d/b/a Mount St. Francis Health Center, a 198 bed nursing facility located in Woonsocket, Rhode Island (herinafter called the "FACILITY").

1.2    MANAGER is in the business of operating and furnishing management and other services to nursing facilities in Rhode Island.

### 2.    Management Services

2.1    MANAGER shall have complete authority to manage and control all health care and financial aspects of the operation of the FACILITY. MANAGER'S authority shall include, without limitation thereto, the powers to select, employ, fix the compensation of, discharge and direct the activities of all personnel; to establish and from time to time change all accounting, bookkeeping, record keeping, and reporting activities; to effect the purchase, and control the disposition of, all supplies and equipment; and from time to time institute, implement and effectuate such policies, rules, regulations and procedures for the rendering of nursing care as it deems necessary or appropriate for the proper and orderly functioning of the FACILITY.

2.2    MANAGER shall provide all necessary services for the operation of the FACILITY, including but not limited to the following:

a.    Select, employ and supervise one or more administrators, a director of nursing, a chef, and all other personnel required to operate the FACILITY;

b.    Act as a liaison between FACILITY and outside State, Federal and Private entities;

c.    Arrange for contracts for the purchase of all medical supplies, dietary, office and other items required to operate the FACILITY;

- 1 -

Ref to OIG Evaluation                          Auditee Comments

 

 

 

 

 

                      d.    Establish standardized personnel and operational policies and procedures;

                      e.    Provide management review of costs of all departments of the FACILITY: .

                      f.    Arrange for in-service training seminars for all personnel;

                      g.    Provide continuous review of all operational aspects of the FACILITY;

                      h.    Advise on all laws and regulations with respect to compliance requirements for licenser of the FACILITY; and

                      i.    Establish and maintain banking relationships for said FACILITY including but not limited to bank financing if necessary;

                      j.    Provide management review for all interior, exterior and equipment maintenance for the FACILITY;

                      k.    Do everything necessary to ensure the continued operation of the FACILITY.

      3.    Statements and Reports

          3.1    MANAGER shall furnish or cause to be furnished to OWNER (a) computerized operating and management statements within twenty-one (21) days after the end of each month showing all income, expense, and cash flow, and (b) prepare and file quarterly payroll tax returns within twenty-five (25) days after the end of each quarter, unless delayed by circumstances beyond its control.

          3.2  MANAGER shall prepare or cause to be prepared for the FACILITY Medicare and Medicaid reports, budgets, internal financial reports, and MANAGER shall supervise the preparation of such other reports or statements as may be required by City, State and Federal laws and regulations. MANAGER shall submit to OWNER for prior review any such report ten (10) days before such report is filed with the proper City, State or Federal agency. If OWNER does not notify MANAGER of any changes to such report within five days, then it shall be assumed OWNER has approved such report.

          3.3    OWNER shall appoint independent certified public accountants to perform an annual audit and prepare annual certified financial statements and all tax returns except payroll tax returns which shall be prepared and filed by MANAGER.

                                                  - 2 -

Case 1:09-cv-00432-ML-PAS    Document 12-5    Filed 10/07/09    Page 29 of 37 PageID #: 410

Ref to OIG Evaluation                  Auditee Comments

## 4. Term of Agreement

4.1    This Agreement shall be co-terminous with the Partnership Agreement and will expire when the Partnership Agreement expires.

4.2    At the termination of this Agreement, OWNER hereby grants to MANAGER the right to employ directly or in any other nursing facility owned or managed by MANAGER all key and/or supervisory employees of the FACILITY, including, but not limited to, the Administrator, any assistant Administrator or Co-Administrator, the Director of Nurses, and the Chef. Any employee leaving the employ of OWNER at termination of this Agreement to then be employed by MANAGER as above shall give OWNER at least four (4) months written notice of termination.

4.3    The United States Department of Housing & Urban Development (HUD) may terminate this agreement:

a.    For failure to comply with the provisions of the management certification or other good cause, 30 days after HUD has mailed the OWNER and MANAGER a written notice of its desire to terminate the agreement.

b.    In the event of a default under the mortgage note or regulatory agreement, immediately upon HUD's issuance of a notice of termination to the owner and agent. If HUD terminates the agreement, the owner will promptly make arrangements for providing management satisfactory to HUD. HUD's rights and requirements will prevail in the event the management agreement conflicts with their requirements. The MANAGER will turn over to the OWNER all of the FACILITY'S cash, trust accounts, investments, and records within 30 days of the date the management agreement is terminated.

## 5. Compensation of Manager

5.1    As its compensation for providing services under this Agreement, Owner shall pay to MANAGER, commencing January 1, 1995, three percent (3%) of net patient revenue. Compensation shall be due and payable by OWNER to MANAGER by the Twentieth (20th) day of each month for the services rendered in that month.

## 6. Expenses

FACILITY shall reimburse MANAGER for all proper, reasonable, and reimbursable out-of-pocket expenses incurred or paid by MANAGER in connection with performance under this Agreement, including, but not limited to, reproduction costs, telephone charges, and items which OWNER would normally purchase on its own, but which are purchased by MANAGER on behalf of OWNER. MANAGER shall cause vendors of all items purchased for the FACILITY to bill the FACILITY directly on a net

- 3 -

Ref to OIG Evaluation                    Auditee Comments

basis including any pro rata credits which may be due by virtue of pooled or joint purchases. The FACILITY shall promptly pay all such charges. MANAGER shall under no circumstances be required to advance any funds, or to obligate itself in any manner, to employees of OWNER or to third parties for or on behalf of OWNER.

7.    Insurance

MANAGER will arrange for all insurance coverage normally in effect for the operation of a nursing facility, including, but not limited to, fire and extended coverage, workers' compensation, and malpractice. MANAGER will be named a co-insured under all liability and other insurance policies covering any phase of the operation of the FACILITY. All such insurance policies will be with reputable companies, and in amounts reasonably satisfactory to MANAGER.

8.    Representations and Warranty of OWNER

Owner hereby represents and warrants as follows:

8.1    That OWNER is a duly formed Rhode Island Limited Partnership and is in compliance with all applicable Federal, State and local laws and regulations.

8.2    That Antonio L. Giordano is the general partner and that he is authorized to enter into this agreement on behalf of OWNER.

9.    Representations and Obligations of MANAGER

Based upon all representations and warranties of OWNER as set forth in this Agreement, and on condition that OWNER fulfills and continues to fulfill all such representations and warranties on a timely basis, MANAGER hereby represents as follows:

9.1    That MANAGER is a duly formed Rhode Island Limited Liability Company and is in compliance with all applicable Federal, State and local laws and regulations.

10.    Reserves for Replacement

10.1    The FACILITY'S mortgage is insured by HUD, therefore, MANAGER will use its best efforts to insure that all capital improvements, major repairs and replacement of major movable equipment (as defined by HUD) are paid for from available cash flow of the FACILITY; however, if such capital improvements, major repairs, and major and/or minor movable replacement cannot be so funded, then OWNER shall be responsible for obtaining funding for said items.

- 4 -

98

Ref to OIG Evaluation                    Auditee Comments

11.  Indemnification:

OWNER agrees to indemnify and hold harmless the MANAGER in any situation arising out of or from this agreement, where the AGENT has notified the OWNER, by certified mail, return receipt requested, of any event, occurrence of happening which places the OWNER or MANAGER in non-compliance with any local State or Federal notice or where the OWNER instructs the AGENT not to take any action.

12.  Other Activities

OWNER acknowledges that MANAGER is engaged in the business of owning, operating and advising nursing facilities, some of which may be in the geographical area of the FACILITY.  MANAGER may continue all such activities and may at some time in the future acquire, advise or manage other such facilities in the geographic area of the FACILITY, provided that it will in no way favor any of such other facilities over the FACILITY.

13.  Disputes

Any controversy or claim arising out of or relating to this Agreement shall be settled by arbitration conducted in Rhode Island, in accordance with the rules then obtaining of the American Arbitration Association, and judgement upon the award rendered by the arbitrator(s) may be entered in any court, Federal or State.

14.  Notices

Notices required or permitted to be given hereunder shall be in writing and shall be deemed sufficient only if sent by United States registered or certified mail, return receipt requested, postage prepaid, as follows:

If to OWNER:            Mount St. Francis Associates
                       190 Broad Street
                       Providence, RI 02903

If to MANAGER:         Sterling Health Care Management Co., LLC
                       190 Broad Street
                       Providence, RI 02903

or at such other addresses as the respective parties designated by written notice.

- 5 -

99

Ref to OIG Evaluation                Auditee Comments

15.    Parties Bound and Benefited; Assignment; Subcontracts

This Agreement shall bind the parties hereto, their successors and assigns. This Agreement is solely for the benefit of OWNER and MANAGER, their successors and assigns; no other person or entity shall acquire or have any right under or by virtue of this Agreement; and MANAGER shall have no obligation or liability to any person or entity other than OWNER in connection with this Agreement or the providing of services hereunder

16.    Miscellaneous

This Agreement contains the complete understanding of the parties and incorporates all prior agreements, oral or written. Any modification of this Agreement shall be ineffective unless made in writing and signed by both parties. The headings used before the various paragraphs of this Agreement are for ease of reference only and do not constitute parts of this Agreement. If any provision of this Agreement shall be declared invalid or unenforceable, the remaining terms of this Agreement shall not be affected thereby. This Agreement shall be governed by and construed in accordance with the laws of the State of Rhode Island applicable to contracts made and to be preformed therein in conformity with Department of Human Services Guidelines or HUD Regulatory Agreement or any other Federal/State requirements. "Upon request of HUD or OWNER, MANAGER will make available to HUD, at a reasonable time and place, its records and records of identity-of-interest companies which relate to goods and services charged to the project. Records and information will be sufficient to permit HUD to determine the services performed, the dates the services were performed, the location at which the services were performed, the time consumed in providing the services, the charges made for materials, and the per-unit and total charges levied for said services." The OWNER agrees to make available such records within seven (7) days of receipt of HUD's request to do so.

In the event of non-compliance with any of the aforesaid, then said parties to this agreement shall have ninety (90) days to cure said non-compliance.

18.    Severability Clause

Wherever possible, each provision of this agreement shall be interpreted in such manner as to be effective and valid under applicable law. Should any portion of this agreement be declared invalid for any reason in any jurisdiction, such declaration shall have no effect upon the remaining portions of this agreement. Furthermore, the entirety of this agreement shall continue in full force and effect in all other jurisdictions and said remaining portions of this agreement had been executed with the invalid portions thereof deleted.

- 6 -

100

Ref to OIG Evaluation                    Auditee Comments

In Witness Whereof, OWNER, by its duly authorized general partner, and MANAGER, by its duly authorized officer, have executed the Agreement in multiple originals as of January 1, 1995.

WITNESS:

BY _____
Mount. St. Francis Associates

BY: _____
Sterling Health Care Management
Company, LLC.

- 7 -

101

Ref to OIG Evaluation                    Auditee Comments

*AMENDMENT*
*to the*
*MANAGEMENT AGREEMENT*
*for*
*MOUNT ST. FRANCIS HEALTH CENTER*

### Item 16

Until the expiration of four years after the furnishing of the services provided under this contract, MANAGER will make available to the Secretary, U.S. Department of Health and Human Services, and the U.S. Comptroller General, and their representatives, this contract and all books, documents, and records necessary to certify the nature and extent of the costs of those services. If MANAGER caries out the duties of the contract through a subcontract worth $10,000 or more over a 12-month period with a related organization, the subcontract will also contain an access clause to permit access by the Secretary, Comptroller General, and their representatives to the related organization's books and records.

<u>Ref to OIG Evaluation</u>                    <u>Auditee Comments</u>

Project Owner's & Management Agent's Certification for Multifamily Housing Projects f    dentity-of-Interest or Independent Management Agents

U.S. Department of Housing and Urban Develop
Office of Housing
Federal Housing Commissioner    OMB Approval No. 2502-0305 (exp. 10/31/

Public reporting burden for this collection of information is estimated to average 0.15 hours per response, including the time for reviewing instructions, searching exis data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estim y other aspect of this collection of information, including suggestions for reducing this burden, to the Reports Management Officer, Office of Information Policies ems, U.S. Department of Housing and Urban Development, Washington, D.C, 204 10-3600 and to the Office of Management and Budget, Paperwork Reduction Proj (2502-0305), Washington, D.C, 20503. Do not send this completed form to either of the above addresses.

| Project name: | FHA project no: | Date: |
|---|---|---|
| Mount St. Francis Health Center | 016-43044 | 1/8/97 (Revised fr |
| City, State: | | Section 8 no: |
| Woonsocket, RI 02895 | | N/A |

Acting on behalf of **Mount St. Francis Assoc.**, the Project Owner (Owner), and **Sterling Health Care Mgmt**, the Management Agent (Agent), we make the following certifications and agreements to the United States Department of Housing and Urban Development (HUD) regarding management of the above project.

1. We certify that:

a. We will comply with HUD requirements and contract obligations, and agree that no payments will be made to the owner in return for awarding the management contract to the agent, and that such payments will not be made in the future.

b. We have executed or will execute, within 30 days after receiving the approval(s) required by paragraph b below, a Management Agreement for this project The Agreement provides / will provide that the Management Agent will manage the project for the term and fee described below. Changes in the fee will be implemented only in accordance with HUD's requirements

(1) Term of Agreement: **Coterminus with Partnership Agreement**, (2) Fees: **to expire when Partnership agreement expires.**

(a) _N/A_ % of residential income collected;

(b) _N/A_ % of commercial income collected;

(c) _N/A_ % of miscellaneous income collected (This percentage must not exceed the percentage in (2)(a) above).

(d) Special Fees No ☐ Yes ☒ If yes, describe in paragraph 4 of Attachment 1.

(3) Calculation of Estimated Yield (See Attachment 1.)

c. We will disburse management fees from project income only after:

(1) We have submitted this Certification to HUD;

(2) HUD has approved the Agent to manage this project; and

(3) HUD has approved the management fee (if required).

d. We understand that no fees may be earned or paid after HUD has terminated the Management Agreement.

e. If HUD notifies me of an excessive management fee, I, the Agent, will within 30 days of HUD's notice either:

(1) Reduce the compensation to an amount HUD determines to be reasonable and

(2) Require the administrator to refund to the project all excessive fees collected, or

(3) Appeal HUD's decision and abide by the results of the appeal process, making any required reductions and refunds within 30 days after the date of this decision letter on the appeal.

f. If HUD holds the residential management fee yield harmless under the transition provisions of Chapter 3, Section 4 of HUD Handbook 4381.5,

(1) We understand that HUD will adjust the management fee percentage each time HUD approves a rent increase.

(2) We agree to be bound by that percentage until the next rent increase or until HUD approves a different fee, pursuant to our request.

2. We will, if the project is subsidized by HUD, select and admit tenants, compute tenant rents and assistance payments, recertify tenants and carry out other subsidy contract administration responsibilities in accordance with HUD Handbook 4350.3 and other HUD instructions.

We agree to:

Comply with this project's Regulatory Agreement, Mortgage & Mortgage Note, and any Subsidy Contract or Workout / Modification Agreement.

b. Comply with HUD handbooks, notices or other policy directives that relate to the management of the project.

c. Comply with HUD requirements regarding payment and reasonableness

of management fees and allocation of management costs between t management fee and the project account.

d. Refrain from purchasing goods or services from entities that have identi of-interest with us unless the costs are as low as or lower than arms-lengt open-market purchases.

4. The Agent agrees to:

a. Assure that all expenses of the project are reasonable and necessary

b. Exert reasonable effort to maximize project income and to take advantag of discounts, rebates and similar money-saving techniques.

c. Obtain contracts, materials, supplies and services, including the prepar tion of the annual audit, on terms most advantageous to the project.

d. Credit the project with all discounts, rebates or commissions (includin any sales or property tax relief granted by the State or local governmen received.

e. Obtain the necessary verbal or written cost estimates and document th reasons for accepting other than the lowest bid.

f. Maintain copies of such documentation and make such documentatio available for your inspection during normal business hours.

g. Invest project funds that HUD policies require to be invested and tak reasonable effort to invest other project funds unless the owner specificall directs the Agent not to invest those other funds.

5. We certify that the types of insurance policies checked below are in force an will be maintained to the best of our ability at all times, Fidelity bonds and hazard insurance policies will name HUD as an additional payee in the event of loss, Note For any box not checked, attach an explanation as to why you cannot obtain tha type of insurance. Such situations should be extremely rare.

a. ☒ Fidelity bond or employee dishonesty coverage for

(1) all principals of the Agent and;

(2) all persons who participate directly or indirectly in the management an maintenance of the project and its assets, accounts and records. Cover age will be at least equal to the project's gross potential income for two (2 months.

b. ☒ Hazard insurance coverage in an amount required by the project's Mortgage.

c. ☒ Public liability coverage with the Agent designated as one of the insured.

6. The Agent agrees to:

a. Furnish a response to HUD's management review reports, physica inspection reports and written inquiries regarding the project's annual financia statements or monthly accounting reports within 30 days after receipt of the report or inquiry.

b. Establish and maintain the project's accounts, books and records ir accordance with:

(1) HUD's administrative requirements;

(2) generally accepted accounting principles; and

(3) in a condition that will facilitate audit.

7. We agree that:

a. All records related to the operation of the project, regardless of where they are housed, shall be considered the property of the project.

b. HUD, the General Accounting Office (GAO), and those agencies' repre sentatives may inspect:

(1) any records which relate to the project's purchase of goods or services,

(2) the records of the Owner and the Agent, and

(3) the records of companies having an identity-of-interest with the owner and the agent.

103

Ref to OIG Evaluation                    Auditee Comments

| Project Name: | | FHA Project Number" | Date: |
|---|---|---|---|
| Mount St. Francis Health Center | | 016-43044 | 1/8/97 (Revised For |

HUD Field Office Use Only (Check all boxes that apply)

☐ Up-front review of the management fee was:     ☐ Required     ☐ Not required

☐ The management fees quoted in paragraph 1a and explained in Attachment 1 of this Certification are approved.

☐ The management fees quoted in Paragraph 1a and explained in Attachment 1 of this Certification are not approved. The attached letter, dated _____ explains the reasons for this disapproval and sets forth the allowable management fees.

☐ The residential management fee Percentage is held harmless at _____%.

☐ The residential management fee Yield is capped at $_____PUPM. Each time you approve a rent increase, adjust the management fee Percentage t maintain this yield and enter the information required below.

| Effective Date of New Fee %* | Monthly Rent Potential | Collections % Assumed** | Adjusted Management Fee Percentage |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

\* This should be the same date the rent increase is effective.
\*\* 95% unless you approve a different percentage.

| Loan Servicer | | By Supervisory Load Servicer/Loan Management Branch Chief | |
|---|---|---|---|
| Signature | Date | Signature | Date |
| *[signature]* | 3/17/97 | *[signature]* | 3/17/97 |
| Name | | Name | |
| William F. Morales | | Michael G. Watson | |
| Title | | Title | |
| Asset Manager | | Chief, Asset Management Branch. | |

104

Ref to OIG Evaluation                <u>Auditee Comments</u>



**STERLING HEALTH CARE**
MANAGEMENT COMPANY, LLC

THE STANLEY BUILDING
190 BROAD STREET
PROVIDENCE, RI 02903

TEL 401-831-5454
FAX 401-831-2540

February 13, 1997

Ms. Luisa G. Osborne
Director, Multifamily Division
U.S. Department of Housing & Urban Development
Rhode Island State Office
10 Weybosset Street - Sixth Floor
Providence, RI 02903

Re:     Revision to Management Certification (form HUD-9839-B)
        Revision to Management Entity Profile (form HUD-9832)
        Mount St. Francis Health Center
        4016-43044

Dear Ms. Osborne:

In connection with my conversation with William Morales and in conjunction with the Asset Management Circular Letter 96-11, enclosed is the revised Management Entity Profile form HUD 9832 showing the staff salary for Sterling Health Care Management Company. Also enclosed is a copy of the Partnership Agreement for the above referenced nursing facility, which we referenced on the Project Owner's & Management Agent's Certification form HUD 9839-B, Item 1- Term of Agreement.

I trust the above and enclosed meet with your approval; however, should you have any questions or need any additional information, please do not hesitate to contact my office.

Very truly yours,

Juliette A. Vaccaro
General Manager

JAV:msm

Enclosure